EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
JULIUS J. NAM (Cal. Bar No. 288961)
SAURISH APPLEBY-BHATTACHARJEE (Cal. Bar No. 286264)
Assistant United States Attorneys
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4491/2917
     Facsimile: (213) 894-0141
     E-mail:    julius.nam@usdoj.gov
                saurish.bhattacharjee@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 15-621-R-6 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT ANTHONY TNGRYAN |
| v. | Sentencing Date:  5/23/2016 |
| ANTHONY TNGRYAN, | Sentencing Time:  10:00 a.m. |
| Defendant. | Location: Courtroom of the Hon. Manuel L. Real |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Julius J. Nam and Saurish Appleby-Bhattacharjee, hereby files its sentencing position for defendant ANTHONY TNGRYAN.  The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report submitted by the United States Probation Office, and any other evidence or argument that the Court may wish to consider at the time

of sentencing.  The government respectfully requests the opportunity to supplement its position or respond to defendant as may become necessary.

```
Dated: May 9, 2016              Respectfully submitted,

                                EILEEN M. DECKER
                                United States Attorney

                                LAWRENCE S. MIDDLETON
                                Assistant United States Attorney
                                Chief, Criminal Division


                                  /s/ Julius J. Nam
                                JULIUS J. NAM
                                SAURISH APPLEBY-BHATTACHARJEE
                                Assistant United States Attorneys

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA
```

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

On March 7, 2016, defendant Anthony Tngryan ("defendant") pleaded guilty to Count One of the twenty-count indictment in United States v. Daniyelyan, et al., CR 15-621-R, which charges defendant and eight co-defendants with conspiracy to possess fifteen or more unauthorized access devices, in violation of 18 U.S.C. § 1029(b)(2). (Dkt. No. 174.)  The facts of defendant's offense and the resultant sentencing guidelines calculations, as set forth in the plea agreement and the PSR, are not disputed by either party.  For the reasons set forth below, the government recommends a sentence of 27 months' imprisonment, a two-year term of supervised release, and a special assessment of $100.

**II.  THE PRESENTENCE INVESTIGATION REPORT**

On April 18, 2016, the United States Probation Office ("USPO") filed its Presentence Investigation Report ("PSR") in this matter. (Dkt. No. 244.)  The USPO determined, in accordance with the parties' plea agreement, that: defendant's United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") base offense level is 6 under U.S.S.G. § 2B1.1; he is subject to a 10-level enhancement for loss more than $150,000 but less than $250,000 under U.S.S.G. § 2B1.1(b)(1)(F); he is subject to a 2-level enhancement for 10 or more victims under § 2B1.1(b)(2)(A); he is subject to another 2-level enhancement under § 2B1.1(b)(11)(A) for use of device-making equipment.  (PSR ¶¶ 24-30.)  After assessing defendant's role in the instant conspiracy offense, the USPO determined that defendant was "essentially equal in culpability" with his co-defendants, as defendant was one of the co-conspirators who traveled to gas

stations throughout Southern California to install skimmer devices at point-of-sale terminals in order to collect real credit and debit card numbers. (Id. ¶ 32.) Thus, the USPO did not apply any mitigating role adjustment. (Id.) After adjusting for acceptance of responsibility, the PSR reached a total offense level on Count One of 17. (Id. ¶ 38.) Defendant has a criminal history score of 3, placing him in criminal history category II. (Id. ¶¶ 42-45.) Thus, the PSR identified the applicable guideline imprisonment range to be 27 to 33 months. (Id. ¶ 79.) The PSR also identified the applicable guideline range for a supervised release term to be 1 to 3 years. (Id. ¶¶ 82.) Further, the PSR indicated that defendant would be unable to pay a fine. (Id. ¶¶ 75-77.) The PSR did not identify any restitution amount or victims to which restitution may be due. (Id. ¶¶ 89-92.) The PSR also did not identify any grounds for a departure or a variance. (Id. ¶¶ 93, 94.) The USPO has not disclosed its sentencing recommendation to the parties.

**III. ARGUMENT**

The government anticipates that defendant will raise two objections to the PSR. They are: (1) the USPO's decision not to apply a mitigating role adjustment, and (2) the PSR's application of the two-level device-making equipment enhancement under U.S.S.G. § 2B1.1(b)(11), instead of the two-level enhancement for trafficking of unauthorized access devices under the same Guidelines provision as agreed upon by the parties. Before making specific sentencing recommendations, the government addresses these below.

    **A.   DEFENDANT IS NOT ENTITLED TO A MITIGATING ROLE ADJUSTMENT**

The government anticipates that defendant will object to the PSR's determination that defendant was a co-equal participant of the

2

charged conspiracy with his co-defendants (id. ¶ 32), and will seek a mitigating role adjustment under U.S.S.G. § 3B1.2, asserting that defendant was less culpable than the average participant in the conspiracy.  In that event, the government would oppose defendant's request.

The government concurs with the PSR's assessment that defendant is not entitled to a mitigating role adjustment.  (Id.)  Defendant is entitled to a role reduction only when the defendant is "substantially less culpable than the average participant in the criminal activity."  U.S.S.G. § 3B1.2, cmt. n.3(A); United States v. Awad, 371 F.3d 583, 591 (9th Cir. 2004).  In determining defendant's relative role in the offense, the relevant comparison is between defendant's conduct and that of his co-participants in the same conspiracy (rather than a hypothetical average participant in the type of crime involved).  United States v. Cantrell, 433 F.3d 1269, 1283 (9th Cir. 2006); United States v. Rojas-Millan, 234 F.3d 464, 473 (9th Cir. 2000).  "It is not enough that [defendant] was less culpable than [his] co-participants, or even that [he] was among the least culpable of the group . . . ."  Cantrell, 433 F.3d at 1283. In interpreting § 3B1.2, the Ninth Circuit "consistently" has held that this downward adjustment "is to be used infrequently and only in exceptional circumstances."  United States v. Davis, 36 F.3d 1424, 1436 (9th Cir. 1994).  Defendant bears the burden of proving, by a preponderance of the evidence, that he is entitled to a downward adjustment for role in the offense.  Id.

Defendant cannot establish, by a preponderance of the evidence, that he is entitled to a downward adjustment for his role in the offense.  As the PSR correctly noted, defendant, along with his

cohort of co-conspirators, traveled to different gas stations throughout southern California, on different dates, to assist in the installation of skimmer devices. (PSR ¶ 32.) For his part, defendant helped to distract gas station employees and/or to block the view of point-of-sale terminals while the installation was taking place, knowing that the information gathered through the skimmers would be encoded on blank access devices and used by members of the conspiracy to make fraudulent purchases without authorization. (Id.) Defendant's conduct, in this regard, is indistinguishable from that of many of his co-conspirators who participated in the same skimmer installation scheme. (Id.) Indeed, defendant's conduct shows that he was "deeply involved in multiple aspects of this offense and was integral to the completion of the offense." (Id.) See United States v. Murillo, 255 F.3d 1169, 1179 (9th Cir. 2001) (holding that, in drug courier context, evidence that defendant was part of multiple trips or transactions is sufficient to deny a minor role adjustment). As such, defendant cannot show that he is "substantially less culpable than the average participant in the criminal activity," so as to justify a downward adjustment for his role in the offense. U.S.S.G. § 3B1.2, cmt. n.3(A); Awad, 371 F.3d at 591.

In addition, defendant should not receive any reduction for a mitigating role because defendant is receiving a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct. See U.S.S.G. § 3B1.2 cmt. n.3(B) (defendant who was convicted of offense significantly lower than his actual conduct "is not substantially less culpable than a defendant whose only conduct involved the less

4

serious offense"). Despite having also committed conduct constituting aggravated identity theft, defendant's conviction was only for conspiracy to possess fifteen or more unauthorized access devices (PSR ¶¶ 3, 4, 11-18), which permits him to avoid a mandatory two-year consecutive imprisonment term for his criminal activities. See 18 U.S.C. § 1028A. Because defendant will be subjected to a lower offense level and a lower sentence by virtue of being convicted of an offense significantly less serious than warranted by his actual culpability, his role cannot be substantially less than a defendant whose only conduct involved the conspiracy offense of defendant's conviction. See U.S.S.G. § 3B1.2 cmt. 3(B).

Accordingly, defendant is not entitled to any mitigating role adjustment as he was not substantially less culpable than the average participant of the instant conspiracy offense.

**B. A TWO-LEVEL ENHANCEMENT FOR TRAFFICKING OF UNAUTHORIZED ACCESS DEVICES APPLIES JUST AS EQUALLY AS THE ENHANCMENT FOR DEVICE-MAKING EQUIPMENT UNDER § 2B1.1(B)(11)**

In the plea agreement, the parties agreed that, under U.S.S.G. § 2B1.1(b)(11), a two-level enhancement for trafficking of unauthorized access devices applied as to defendant. (Plea Agreement ¶ 11; PSR ¶ 30.) In the PSR, however, the USPO indicated that, under U.S.S.G. § 2B1.1(b)(11) "a 2-level increase for the possession of device making equipment is more appropriate for the facts in this case," as the USPO did not see "evidence establishing that the defendants trafficked in access devices," but defendant has admitted that, on October 21, 2015, access device-making equipment, including a computer connected to a magnetic card reader and writer, was found at a co-conspirator's residence, and that defendant knew

5

1 that the device-making equipment would be used to create counterfeit
2 and unauthorized access devices. (PSR ¶¶ 29, 30.) As
3 § 2B1.1(b)(11) provides for a single two-level enhancement based on
4 multiple rationales – two of which are possession of device-making
5 equipment and trafficking of unauthorized access devices – the USPO
6 acknowledged that the two "alternative enhancements under the same
7 section . . . have the same effect on the offense level," and "[t]he
8 distinction between possession and trafficking may be, in this case,
9 more a matter of characterization than of substance. (Id. ¶ 30.)
10     While the government agrees with the PSR that a two-level
11 enhancement for possession of device-making equipment could apply to
12 defendant in light of his participation in a conspiracy that
13 included possession and use of equipment to manufacture access
14 devices, the government disagrees with the USPO's apparent analysis
15 that evidence of trafficking is required for the trafficking
16 enhancement to apply under § 2B1.1(b)(11), and asks the Court to
17 instead apply § 2B1.1(b)(11) based upon the parties' agreement that
18 the trafficking enhancement applies to defendant's conduct.
19     Pursuant to 18 U.S.C. § 1029(e), "traffic" means "transfer, or
20 otherwise dispose of, to another, or obtain control of with intent
21 to transfer or dispose of." 18 U.S.C. § 1029(e)(5). As set forth
22 in U.S.S.G. § 1B1.3(a)(1)(B), "in the case of a jointly undertaken
23 criminal activity (a criminal plan, scheme, endeavor, or enterprise
24 undertaken by the defendant in concert with others, whether or not
25 charged as a conspiracy), all acts and omission of others that were
26 . . . reasonably foreseeable in connection with that criminal
27 activity" constitutes relevant conduct that may be considered in
28 determining defendant's specific offense characteristics. U.S.S.G.

6

§ 1B1.3(a)(1)(B)(iii).  As the parties have agreed to in the plea agreement, "[d]efendant and his co-conspirators had access to the real credit and debit card numbers stored on the skimming devices installed in the point-of-sale terminals, and knew that these stolen credit and debit card numbers would be used, without authorization, to make fraudulent purchases."  (Plea Agreement ¶ 9; PSR ¶ 16.)  For the credit and debit card numbers that defendant helped steal to be used to make fraudulent purchases, it was reasonably foreseeable that transfer, or trafficking, of the card numbers would need to take place, and ample evidence in this case demonstrated that stolen credit and debit card numbers were used to make fraudulent purchases such that there were at least ten victim financial entities.  (PSR ¶ 28.)

It was thus reasonably foreseeable to defendant that trafficking of unauthorized access devices that he helped steal would occur in connection with his offense conduct.  See United States v. Sosanya, 57 F. App'x 955, 956 (3d Cir. 2003) (unpublished) (concluding that, under § 2F1.1(b)(5) (which has since become § 2B1.1(b)(11)), if "production or trafficking in counterfeit access devices is a reasonably foreseeable act that occurred during the commission of the offense or in preparation for that offense, § 1B1.3(a) of the Guidelines prescribes that that conduct is relevant").  It is precisely because trafficking of unauthorized access devices was reasonably foreseeable that defendant stipulated to the pertinent sentencing enhancement in his plea agreement.  Accordingly, while both the possession of access device-making equipment and the trafficking of unauthorized access devices that were part of – and reasonably foreseeable in – the instant

7

conspiracy offense equally warrant a two-level enhancement under § 2B1.1(b)(11), the government asks the Court to abide by the parties' agreement in the plea agreement.

**IV. GOVERNMENT'S SENTENCING RECOMMENDATION**

Setting aside the PSR's rationale for application of the § 2B1.1(b)(11) enhancement, the government otherwise agrees with all sentencing calculations in the PSR, and recommends a low-end term of 27 months' imprisonment, a two-year term of supervised release, a special assessment of $100, and a waiver of fines. This sentence is sufficient, but not greater than necessary, to meet the sentencing goals set forth in 18 U.S.C. § 3553(a).

**A. 18 U.S.C. § 3553(A)(1)**

Under 18 U.S.C. § 3553(a)(1), the Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" in imposing a sentence. Defendant has pleaded guilty to a conspiracy to install skimming devices at gas station pumps throughout southern California and Las Vegas with the goal of stealing ATM, credit, and debit card numbers and associated customer information from unsuspecting gas station customers, knowing that the stolen information would be used to make fraudulent purchases. (PSR ¶¶ 11-18.) This offense resulted in the theft of more than 2,000 credit and debit card numbers over the period of at least two-and-a-half years. Specifically, defendant participated in this conspiracy for at least ten months during which at least 458 credit and debit card numbers were stolen, leading to a loss amount determination of $229,000, pursuant to U.S.S.R. § 2B1.1(b)(1), Application Note 3(F), which permits an intended loss amount calculation of $500 per unauthorized access device. (Id.

8

¶¶ 26, 27.) The government's recommended sentence justly reflects the seriousness of defendant's offense committed with disregard for other people's property and for a fraudulent purpose. The recommended sentence also reflects the fact that defendant committed the instant offense while on a 24-month probation imposed by the Los Angeles County Superior Court on February 19, 2014 for unlawful operation of medical marijuana business, a misdemeanor. (Id. ¶¶ 42-44.) Taking into consideration defendant's acceptance of responsibility for his role and participation in the offense, his relatively light criminal history, and his apparently positive character and conduct as attested to by members of his community (id. ¶¶ 56, 69), the government's recommended custodial sentence of 27 months at the low end of the guideline range is appropriate and just.

**B.    18 U.S.C. § 3553(A)(2)**

Under 18 U.S.C. § 3553(a)(2), the Court must consider "the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

A sentence of 27 months will serve to protect the community from further crimes by defendant, afford adequate specific and general deterrence, and promote respect for the law.

///

///

### C. 18 U.S.C. § 3553(A)(3)-(7)

Under 18 U.S.C. § 3553(a)(3)-(7), the Court must consider "the kinds of sentences available," "the kinds of sentence and the sentencing range established," "any pertinent policy statement," "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and "the need to provide restitution to any victims of the offense." The government's recommended low-end sentence serves these statutory objectives of sentencing, as a within-guidelines sentence for defendant whose criminal history category II and total offense level of 17 place him in Zone D and outside the possibility of any probationary sentence. U.S.S.G. § 5B1.1, Application Note 2. A within-guidelines sentence, in the absence of any significant mitigating factors that warrant departures or variances, also is not likely to result in unwarranted sentencing disparities. (PSR ¶¶ 93, 94.) As for restitution in this case, the government has identified actual financial losses sustained by victim financial institutions and will separately be seeking restitution from each defendant in this case through post-sentencing restitution proceedings as provided for in U.S.S.G. § 5E1.1.

### V. CONCLUSION

The government respectfully recommends that the Court impose a sentence of 27 months' imprisonment, a two-year period of supervised release, a mandatory special assessment of $100, and a waiver of fines.