**LAW OFFICES OF GEVORK CHILINGARYAN**
GEVORK CHILINGARYAN (SBN 279096)
10100 Santa Monica Boulevard, Suite 300
Los Angeles, California 90067
Telephone: (818) 517-5826
Fascimile:  (310) 772-2286
Email: Gevorkch@yahoo.com

*Attorney for Anthony Tngryan*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) CR No. 15-00621-R-6 |
| Plaintiff, | ) **DEFENDANT'S SENTENCING POSITION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; EXHIBITS** |
| vs. | ) |
| ANTHONY TNGRYAN, | ) Court: Hon. Manuel Real |
| Defendant. | ) Date: May 23, 2016 |
|  | ) Time: 10:00 a.m. |

Defendant ANTHONY TNGRYAN, by and through his attorney of record, Gevork Chilingaryan, hereby submits his Sentencing Memorandum setting forth the factors the Court should consider in determining what type of sentence is "sufficient, but not greater than necessary" to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

This memorandum is based upon the Presentence Investigation Report prepared by the United States Probation Office, the attached exhibits, the documents and records on file in this matter, and any argument or evidence that may be presented at the hearing which the Court may want to consider.

1

For the reasons set forth in the attached memorandum, Mr. Tngryan respectfully requests the Court to both find a variance from the guidelines, and to depart downward from the recommended guideline sentencing range. Furthermore, Mr. Tngryan respectfully requests the Court to impose a sentence of probation, to be followed by a 3-year term of supervised release, or in the alternative, that Mr. Tngryan be sentenced to probation with the special condition that includes 1-year of community confinement, as fully detailed in the accompanying memorandum of points and authorities. This sentence would be "sufficient, but not greater than necessary" to achieve the purposes of sentencing.

Dated: May 10, 2016.

Respectfully Submitted,

_____/s/_____
**GEVORK CHILINGARYAN**
*Attorney for Defendant*

**LAW OFFICES OF GEVORK CHILINGARYAN**
GEVORK CHILINGARYAN (SBN 279096)
10100 Santa Monica Boulevard, Suite 300
Los Angeles, California 90067
Telephone: (818) 517-5826
Fascimile:  (310) 772-2286
Email: Gevorkch@yahoo.com

*Attorney for Anthony Tngryan*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR No. 15-00621-R-6 |
|        Plaintiff, | ) **DEFENDANT'S SENTENCING** |
| | ) **POSITION; MEMORANDUM OF** |
| | ) **POINTS AND AUTHORITIES IN** |
| | ) **SUPPORT THEREOF; EXHIBITS** |
|   vs. | ) |
| | ) |
| | ) |
| ANTHONY TNGRYAN, | ) Court: Hon. Manuel Real |
|       Defendant. | ) Date: May 23, 2016 |
| | ) Time: 10:00 a.m. |
| | ) |

I.

**<u>INTRODUCTION</u>**

Defendant, ANTHONY TNGRYAN, by and through the undersigned counsel of record, Gevork Chilingaryan, hereby submits the following memorandum of points and authorities in support of his requested sentence. The requested sentence would be "sufficient, but not greater than necessary" to achieve the purposes of sentencing.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.

## FACTUAL BACKGROUND

### A. The Offense

Although the exact date the underlying offense occurred is unclear, according to the indictment the overt acts of the conspiracy began on July 9, 2013, when the alleged co-conspirator, Nazar Daniyelyan, "using a number of vehicles, including [a] blue Chevrolet conversion van, [a] gold GMC Yukon, and [a] silver Chevrolet Traverse, traveled to the 76 Gas Station located at 911 South San Fernando Blvd" and installed a skimming device at the point-of-sale terminal with the intent to unlawfully obtain access device information. [Indictment p. 4 (Overt Acts 1-5)] The Conspiracy continued through October 21, 2015.

The only Overt Acts or allegations that Mr. Tngryan is alleged to have participated in the conspiracy occurred on December 7, 2014, when Mr. Tngaryan, along with co-conspirator Daniyelyan and other known and unknown co-conspirators, using the silver Chevrolet Traverse, traveled from Daniyelyan's residence to a 76 Gas Station located at 40010 Washington Street, Bermuda Dunes, California. While at the gas station, an unknown co-conspirator installed a skimming device in a gas pump. [Indictment p. 15 (Overt Acts 65-66)] On the same day,  the group then travelled to a Valero Gas Station in Rancho Mirage, where an unknown co-conspirator installed a skimming device. [Indictment p. 15 (Overt Acts 67-68)] The group then went to the

Morongo Casino and then back to Daniyelyan's residence. [Indictment p. 15 (Overt Act 69)]

Again, on April 9, 2015, Mr. Tngryan was present when with Danilelyan, Terzyan, and Karapetyan the group went to two gas stations, a 76 Station located at 9988 Wilshire Blvd., Beverly Hills, CA and right after a 76 Station located at 9460 West Olympic Blvd., also in Beverly Hills. While at the Olympic Boulevard gas station, an unknown co-conspirator installed skimming devices while Daniyelyan, Karapetyan, and Mr. Tngryan in an alleged attempt to distract the Gas station employee while a skimming device was being installed. No skimming device was found at the Willshire Boulevard 76 Station. [Indictment p. 15 (Overt Acts 82-86)]

## B.  Indictment and Plea

On November 10, 2015, Mr. Tngaryan was named in a 20-Count  Indictment. Mr. Tngryan was named in Counts 1, 13, and 19.

On March 16, 2016, Mr. Tngryan entered a plea of guilty to Count 1, which charged a violation of 18 U.S.C. § 1029(b)(2): Conspiracy to Possess Fifteen or More Unauthorized Access Devices. Beginning on an unknown date, and continuing through on or about October 21, 2016, the defendants, together with others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and with intent to defraud possess fifteen or more unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3).

## C.  Plea Agreement

Under the terms of the plea agreement, the parties agreed to a base offense level of 6, pursuant to U.S.S.G. § 2B1.1(a); a 10-level increase for loss of more than

$150,000.00 but less than $500,000.00 pursuant to U.S.S.G. § 2B1.1(b)(1)(F); a 2-level for the number of victims pursuant to U.S.S.G. § 2B1.1(b)(2)(A); and an additional two-level increase for trafficking in unauthorized access devices pursuant to U.S.S.G § 2B1.1(b)(11). [Plea Agreement p. 9 ¶11] The parties reserved the right to argue that additional specific offense characteristics, adjustments and departures are appropriate under the Guidelines and to argue for a sentence outside the sentencing range established by the Guidelines based on the factors set forth in 18 U.S.C. § 3553. [Plea Agreement p. 9 ¶¶ 12-13] The total offense level under the Guidelines is 20, however, after 3-level adjustment for acceptance of responsibility, the resulting adjusted Guideline sentencing range would be 17.

**D. Pre-sentence Investigation Report**

On April 18, 2016, the United States Department of Probation issued a Pre-sentence Investigation Report, wherein the Probation officer applied the U.S. Sentencing Guidelines.

Under the Guidelines, the Probation Officer found an adjusted offense level of 20 [PSR p. 10 ¶34] and a total offense level of 17 following an adjustment for acceptance of responsibility. [PSR p. 10 ¶ 38]

Addressing Mr. Tngryan's criminal history, he was assigned to Criminal History Category II, based on a finding that he suffered a prior misdemeanor conviction for unlawful operation of a medical marijuana clinic. [PSR p. 11 ¶42] Mr. Tngryan was further assigned two additional criminal history points because he committed the instant offense while being on informal probation for the

aforementioned misdemeanor offense. [PSR p. 11 ¶ 44] With three criminal history points Mr. Tngryan was designated as a Category II Offender. [PSR p. 11 ¶45]

As a Category II Offender, Mr. Tngryan's sentencing range is 27 to 33 months imprisonment.

III.

<u>**SUMMARY OF ARGUMENT**</u>

This is an atypical case where the Guidelines have simply gone astray and the ultimate Guideline sentence is clearly in conflict with 18 U.S.C. § 3553(a)'s requirement that a court impose a sentence that is "sufficient but not greater than necessary" to achieve its objectives.

While the Government and Probation Department come up with a recommended sentence of 27 months imprisonment under the Guidelines based on a total offense level of 17 as a Category II Offender, because Mr. Tngryan played a minimal or "peripheral role" in the offense (-4 levels), that his involvement was aberrant behavior (-2 levels), and his Criminal History Category is overstated. His total offense level should be 11 with a Guideline range of 8-14 months as a Category I Offender which make's him eligible for probation under the Guidelines.

Under the statutory factors however, Mr. Tngryan is automatically eligible for probation, and when considering (1) the nature and circumstances of the offense (his role in the offense, the duration for which he was involved, and that he did not gain from his involvement) and his personal history and characteristics (lack of prior or serious criminal record, hardship on the family, the need to care for his ailing grandfather, employment record, and good deeds), (2) the need for the sentence

7

imposed for the first time offender, and (3) to avoid unwarranted sentencing disparity, all conflict with the recommended sentence of imprisonment under the Guidelines as calculated by the Government and Probation Department.

As explained below, both the Guidelines and statutory objectives support the requested sentence of probation.

III.

**ARGUMENT**

A.   **GUIDELINE SENTENCING FACTORS**

1.   Governing Guideline Principles

Even before _United States v. Booker_, 543 U.S. 220 (2005), the Supreme Court said in Koon v. U.S. , 518 U.S. 81, 113 (1996), that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Thus, the guidelines before Booker, "place[d] essentially no limit on the number of potential factors that may warrant a departure." _Koon_, 518 U.S. at 106; _U.S. v. Coleman_, 188 F.3d 354, 358 (6th Cir.1999) (en banc) (there are a "potentially infinite number of factors which may warrant a departure"). A departure was warranted if the case was "unusual enough for it to fall outside the heartland of cases in the guidelines." Even when the guidelines were mandatory, they did not "displace the traditional role of the district court in bringing compassion and common sense to the sentencing process….In areas where the Sentencing Commission has not spoken . . . district courts should not hesitate to use their discretion in devising sentences that provide individualized justice."

*U.S. v. Williams*, 65 F.3d 301, 309-310 (2d Cir. 1995); "It is important, too, to realize that departures are an important part of the sentencing process because they offer the opportunity to ameliorate, at least in some aspects, the rigidity of the Guidelines themselves. District judges, therefore, need not shrink from utilizing departures when the opportunity presents itself and when circumstances require such action to bring about a fair and reasonable sentence." *U.S. v. Gaskill*, 991 F.2d 82, 86 (3rd Cir. 1993).

"The Guidelines are not a straightjacket for district judges." *U.S. v. Cook*, 938 F.2d 149, 152 (9th Cir. 1991); The Guidelines "do not require a judge to leave compassion and common sense at the door to the courtroom." *U.S. v. Dominguez*, 296 F.3d 192, 196 n. 7 (3rd Cir. 2002) (quoting *U.S. v. Johnson*, 964 F.2d 124, 125 (2d Cir.1992*)); U.S. v. Blarek II*, 7 F.Supp. 2d 192, 211 (EDNY 1998) ( "To impose the harsh sentence suggested by Probation and the government under the Guidelines without appropriate downward departures would amount to an act of needless cruelty given the nature of the crimes committed and the personal circumstances of these defendants . . . [i]f the 600-plus pages of the most recent set of sentencing guidelines have taught us anything, it is that punishment cannot be reduced to analgorithm.").

2. Minimal Role

Upon determining that a defendant is "substantially less culpable than the average participant," Application Notes 4 and 5 explain how to distinguish between "minimal" and "minor" participants. Application Note 4 provides that § 3B1.2(a)'s 4-level reduction for minimal participants *"is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group."* U.S.S.G. §3B1.2, comment. (n.4). The note further provides that "the defendant's lack of knowledge or

understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant."" *Id.  See also United States v. Cantrell*, 433 F.3d 1269, 1283 (9th Cir. 2006) ("While a comparison to the conduct of a hypothetical average participant may be appropriate in determining whether a downward adjustment is warranted at all, the relevant comparison in determining which of the § 3B1.2 adjustments to grant a given defendant is to the conduct of co-participants in the case at hand.") (internal quotations omitted); *United States v. Johnson,* 297 F.3d 845, 874 (9th Cir. 2002) ("[A] defendant's culpability is to be measured against his co-participants, not a hypothetical 'average participant.'").

Application Note 5 provides that § 3B1.2(b)'s 2-level reduction for minor participants applies to defendants who are "less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.5).

Whether the defendant is entitled to a mitigating-role adjustment, was a minimal or minor participant, or occupied a role falling between minimal and minor, is "heavily dependent upon the facts of the particular case." U.S.S.G. §3B1.2, comment. (n.3(B)). Given the fact-dependent nature of §3B1.2 role adjustments, clear principles are difficult to develop and apply. Courts, however, have interpreted §3B1.2 and its commentary in order to give additional guidance for determining whether to apply a mitigating-role adjustment.

Some courts have offered variations on Application Note 3(A)'s "substantially less culpable" language. In the Third Circuit, the minor role adjustment only applies if the defendant shows that his or her "involvement, knowledge and culpability were materially less than those of other participants" and not merely that "other participants in

the scheme . . may have been more culpable." *United States v. Brown*, 250 F.3d 811, 819 (3d Cir.2001). In the Eighth Circuit, a defendant is not substantially less culpable if he was deeply involved in the offense, even if he was less culpable than the other participants. *See United States v. Cubillos*, 474 F.3d 1114, 1120 (8th Cir. 2007) (citations omitted).

Other courts have concluded that for purposes of applying the 4-level "minimal" participant adjustment, the defendant must have been only a "peripheral figure" in the criminal activity. "To qualify as a minimal participant, a defendant must prove that he is among the least culpable of those involved in the criminal activity. . . . In short, a defendant must be a plainly peripheral player to justify his classification as a minimal participant." *United States v. Santos*, 357 F.3d 136, 142 (1st Cir. 2004); *see also United States v. Teeter*, 257 F.3d 14, 30 (1st Cir. 2001) ("To qualify as a minimal participant and obtain the concomitant four-level reduction, the [defendant] would have to prove by a preponderance of the evidence that she was, at most, a peripheral player in the criminal activity."). The Fifth Circuit has gone further, concluding that defendant must demonstrate that he or she played only a peripheral role to receive *any* mitigating role adjustment, even the 2-level minor participant reduction. *See United States v. Miranda*, 248 F.3d 434, 446-47 (5th Cir. 2001) ("A minor participant adjustment is not appropriate simply because a defendant does less than other participants; in order to qualify as a minor participant, a defendant must have been peripheral to the advancement of the illicit activity.").

In this case, Mr. Tngryan clearly played a minimal role in the underlying conspiracy. Mr. Tngryan was not found to be in possession any access devices, access

device making equipment, skimmers, or other evidence that would indicate he played anything but a minimal role on two days in the middle of the conspiracy which lasted two-years.

As previously discussed, other than being present and with Danilelyan on December 7, 2014, when two skimming devices were installed at several gas stations, he was actually only accompanying Danilelyan to the Morongo Casino and there is no evidence or an allegation that he assisted in the installation of those devices. Likewise on April 15, 2015, Mr. Tngryan was again with Danilelyan and the only evidence indicating his involvement is that he allegedly went into the gas station to distract the employee while a skimming device was installed. There are no allegations, nor evidence that Mr. Tngryan assisted or was involved in developing or planning the scheme, or that he gained anything from his involvement in distracting an employee on the single occasion.

When comparing Mr. Tngryan's involvement to that of the co-conspirators, there is clearly someone other than him that developed and planned the scheme that began nearly a year before the December 7, 2014, installation of skimming devices. The scheme involved co-conspirators drivers and their vehicles, installation of skimming devices and the retrieval of access device information from a remote location and then re-encode the information onto fraudulent access devices then either sell the devices or use them to purchase merchandise or withdrawing currency. Thus, the offense entails the leaders and organizers who developed and planned the scheme, installers who placed the skimmers into gas pumps, retrievers who returned to download the access device information and possibly re-encode it onto fraudulent access devices,  drivers who would block the gas station employees view of the pumps, sellers who would sell the

fraudulent access devices and purchasers who would purchase merchandise. All of these individuals were clearly involved in the offense and had something to gain while Mr. Tngryan's actual involvement when entering a store on a singular occasion to distract a gas station employee indicates that he clearly played a peripheral role in the offense.

Under the facts and circumstances of this case, the Court should depart downward 4-levels in the offense level as Mr. Tngryan was clearly a minimal participant.

3. Criminal History is Overstated

It is well-settled that a "departure under § 4A1.3 is specifically authorized by the Sentencing Guidelines whenever the computed criminal history significantly under-represents' or 'significantly over-represents' the seriousness of defendant's criminal history or the likelihood that the defendant will commit further crimes." *United States v. Pinckney*, 938 F.2d 519, 521 (4th Cir. 1991). As the Court of Appeals for the Fourth Circuit has explained:

> "Criminal history" is, relatively, one of the most flexible concepts in the guidelines. While it is possible to classify the severity of current federal offenses with a reasonable degree of precision, mathematically accurate evaluation of the countless possible permutations of criminal history, involving offenses of high and petty committed in numerous jurisdictions, would be at best unwieldy. The Sentencing Commission recognized this difficulty, and though it prescribed a mathematical method to calculate criminal history, it specifically identified overstatement or understatement of the seriousness of the defendant's past conduct as a ground for departure from the raw criminal history score. *United States v. Adkins*, 937 F.2d 947, 952 (4th Cir. 1991); accord *United States v. Summers*, 893 F.2d 63, 67 (4th Cir. 1990) (affirming downward departure based on criminal history). Accordingly, a departure may be warranted based on a consideration of factors relevant to determine whether the SR calculation significantly over-represents a defendant's criminal history or the likelihood that the defendant will commit further crimes. See § 4A1.3. In Summers, for example, the Fourth Circuit affirmed a downward departure on the ground that the defendant's criminal history category overstated the severity of the defendant's criminal history, which included

> "convictions for grand larcenies, possession of narcotics, a weapons violation, driving with suspended license violations and probation revocation." 893 F.2d at 65."

*Ibid.*

Likewise, in *United States v. Nelson*, 166 F. Supp. 2d 1091 (E.D. Va. 2001), the Court granted a motion for a downward departure based on overstatement of criminal history from Level VI to Level III. In its discussion of the relative characteristics of defendants within criminal history categories, the Court identified a typical case involving a defendant who had been properly classified within criminal history category VI, and noted that the defendant's record in that case consisted of "possession of cocaine, three points for possessing cocaine with intent to distribute in a school zone, two points for assault, one point for possession of drugs, one point for assault, and three points for possession of cocaine" *Id.* at 1097.

In this case, Mr. Tngryan accumulated 3 Criminal History point that resulted in him designated as a Category II Offender. The points are the result of zoning violations when he operated an otherwise legal medical marijuana clinic and imposition of a 2-year term of probation. Likewise, because the underlying offense was committed during that term of probation, the PSR added an additional 2-points to his criminal history calculation. Mr. Tngryan has absolutely no other arrests, convictions, or criminal history in his background.

The Guidelines do not reflect the criminal history of a defendant who ordinarily would fall within category II. Criminal History Category II applies to defendants who have accrued 2 or 3 criminal history points. 3-points are usually applied to individuals who have suffered a felony conviction and received at least 1-

year imprisonment. U.S.S.G. § 4A1.1(a). Mr. Tngryan has never been sentenced to a term of imprisonment and other than the arrest for the zoning violation, has never spent a day in jail.

As a general matter, "[r]ecidivism rates rise as criminal history points increase and as CHCs increase." U.S. Sentencing Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 15 (May2004). Category II is thus designed to encompass at least a heightened level of serious criminal offenders that have served time in jail. Such histories generally involve felony offenses.

Nonetheless, the Sentencing Commission recognized that the Guidelines might not always account for cases like this one, and therefore designed § 4A1.3 to address situations where the defendant's history of traffic infractions and other relatively minor convictions place the defendant in a criminal history category usually reserved for those with substantially more serious criminal histories. Mr. Tngryan respectfully asks that the Court depart below the applicable guideline range pursuant to this Section by reducing his criminal history points three (2) levels, designating him a Category I Offender.

4. Aberrant Behavior

Finally, as discussed in the request for a variance, Mr. Tngryan's minimal involvement in the underlying offense, the time involved, when coupled with his lack of a prior serious criminal history establishes an additional 2-level downward departure. Because this question can be found as a variance or departure, in the

interests of brevity, it is addressed as a variance. _United States v. Ellis_, 641 F.3d 411, 421-22 (9th Cir. 2011); _United States v. Dallman_, 533 F.3d 755, 761 (9th Cir. 2008).

B. **CONSIDERING THE SENTENCING FACTORS UNDER 18 U.S.C. § 3553, THE COURT SHOULD FIND A SUBSTANTIAL VARIANCE FROM THE GUIDELINES**

In this case, the Guideline sentence of imprisonment conflicts with 18 U.S.C. § 3553(a)'s directive to impose a sentence "sufficient but not greater than necessary."

Under the principles set forth in _United States v. Booker_, 543 U.S. 220 (2005), the Federal Sentencing Guidelines are purely advisory. While Courts must still consider the appropriate Guidelines sentencing range, this range is no longer "the end of the sentencing inquiry; rather, it is just the beginning." _United States v. McBride_, 434 F.3d 470, 476 (6th Cir. 2006). The Sentencing Commission's advice is just one "ingredient" in "the section 3553(a) mix," not entitled to any greater consideration than any other factor. _Id._

In determining the sentence minimally sufficient to comply with or meet the aims in § 3553(a), a sentencing court must consider the factors listed, which include:

"(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment . . .
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment                    treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines that are in effect on the date the defendant is sentenced . . .

(5) any pertinent policy statement —

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense."

*Id.*

Neither Section 3553(a) nor Booker suggest that any of these circumstances is individually paramount. All of these factors, however, are controlled by § 3553(a)'s mandate to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing.

Numerous appellate decisions from various circuit courts have clarified the role and approach of the sentencing court in the post-Booker era. The Ninth Circuit has held that "Booker empowered district courts, not appellate courts.... [and] breathe[d] life into the authority of district court judges to engage in individualized sentencing." United States v. Whitehead, 532 F.3d 991, 993 (9th Cir. 2008) (citations omitted).

The Sixth Circuit has stated: "Many times we have emphasized that a district court's mandate is to impose a sentence sufficient, but not greater than necessary to comply with the purpose set forth in § 3553(a)(2)." United States v. Yopp, 453 F3d 770, 773 (6th Cir. 2006). The Sixth Circuit has further described the role of the sentencing court as follows: "[A] district court's job is not to impose a 'reasonable'

sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2). Reasonableness is the appellate standard of review in judging whether a district court has accomplished its task." *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006) (emphasis added). Furthermore, the Ninth Circuit has held that in weighing the sentencing decisions of a district court, the proper standard is abuse of discretion, and it will not "second guess" the court's conclusions so long as they are reasonable. *United States v. Menyweather*, 447 F.3d 625, 633 (9th Cir. 2006).

Finally, the Seventh Circuit has instructed that post–*Rita v. United States*, 127 S.Ct. 2456 (2007), "[t]he district courts must calculate the advisory sentencing guideline range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." *United States. v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir. 2007).

    1.    <u>The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant</u>

**(a) Nature and Circumstances of the Offense**

While the underlying felony offenses herein are serious, it's seriousness is clearly overstated when considering the Defendant's role[1] and as indicated by the

---

[1]    *U.S. v. Cabrera*, 567 F.Supp.2d 271 (D. Mass. 2008) (district court granted 3553(a) variance of 24 months to safety-valve eligible homeless man caught in sting operation who was at most a delivery man sent at the last minute to pickup drugs from undercover agents, which variance was required even after applying Guidelines minimal role adjustment for a first-time offender who presented a low risk of recidivism); *U.S. v. Ledezma*, 2007 4143225 (E.D. Wis. Nov 19, 2007) (Court granted a departure based on substantial assistance. Court further varied downward to one day imprisonment based on no criminal history, minimal role

harsher Guidelines as discussed above.  Moreover, irrespective of whether the Court characterizes the grounds above as departures or variances, the nature and circumstances of the offense, is further mitigated by numerous factors warranting a variance from the Guidelines and a probationary sentence in this case.

### (b)      Personal History and Characteristics

Mr. Tngryan is a 28 year old American citizen of Armenian descent and is currently married to Christine Tatoyan. The couple have a daughter, who is 20 months old.  [PSR p. 12 ¶55] Mr. Tngryan has resided in Los Angeles, California, his entire life. Mr. Tngryan's limited involvement in offense does not appear to be caused by greed, as he gained nothing from his involvement in the offense and the he lives with his wife and daughter in a 2 bedroom and two bathroom apartment in the San Fernando Valley. The apartment is modestly furnished with inexpensive furnishings.

Although Mr. Tngryan's wife occasionally works as a make-up artist, they largely depend on his income as a caregiver for his grandfather, Asatur Tngryan, who suffers from diabetes and Alzheimer's disease. Mr. Tngryan has been his grandfather's caregiver since he was 17 years old. [PSR p. 12 ¶54] In the event Mr.

---

in the crime, and just punishment. The Court noted that the defendant was a positive role model in the community by telling young girls her story and how not to fall victim to similar circumstances.); _U.S. v. Szanto_, 2007 WL 3374399 (N.D. Ill. Nov. 8, 2007) (District court granted a downward variance on several factors. First the defendant was a minimal participant in the crime since he believed he was transporting Viagra not Ecstacy. Second, financial hardships were a motivating factor but during a two year pretrial detention, the defendant had mastered the English language making him more employable. Finally, he was a Canadian citizen and agreed to be deported. Court varied by 12 months and sentenced him to 24 months, time served.); _U.S. v. Greer_, 375 F. Supp. 2d 790 (E.D. Wis. 2005) (no imprisonment in drug case appropriate partly because defendant was a girlfriend playing peripheral role in drug crime, noting that too often women are punished for remaining with boyfriend or spouse engaged in drug activity, who is typically the father of her children).

Tngryan is incarcerated, not only will his wife will be unable to care for the child, provide housing, food and care for themselves, but it is highly unlikely that his family will be able to adequately care for his grandfather.[2] Mr. Tngryan has been the

---

[2]    *United States v. Bueno*, 549 F.3d 1176, 1178 (8th Cir. 2008) (approving variance to probation to allow defendant convicted of distribution of five kilograms of cocaine to care for wife suffering from Lupus and Rheumatoid Arthritis); *United States v. Schroeder*, 536 F.3d 746, 755 (7th Cir. 2008)(court could vary to allow defendant to look after daughter with compromised immune system); *United States v. Husein*, 478 F.3d 318, 322-23 (6th Cir. 2007) (270 days home confinement followed by supervised release to allow defendant convicted of distributing Ecstacy to care for father incapacitated by strokes); see also pre-Booker decision in *United States v. Gauvin*, 173 F.3d 798, 808 (10th Cir. 1999)(affirming downward departure based in part on need to minimize impact of sentence on children where defendant supported his four young children and defendant's wife worked 14-hour days at employment miles from home, no extended family could take custody of children, and wife therefore risked losing her job and/or custody of the children if defendant were removed from the home); *U.S. v. Munoz-Nava*, 524 F.3d 1137 (10th Cir. 2008) (sentence of 1 year and 1 day for a man who possessed with intent to distribute 100 grams of heroin, despite a guideline range of 46-57 months, based on his long work career, community support, lack of a criminal record, and responsibilities as sole supporter of 8-year-old son and elderly parents, which reduced the likelihood he would re-offend); *U.S. v. Antonakopoulos*, 399 F.3d 68 (1st Cir. 2005) (on remand of bank fraud case, district court may consider defendant's role as caretaker for brain-damaged son even though alternative means of care existed) *U.S. v. Dominguez*, 296 F.3d 192 (3d Cir.2002) (district court erred in concluding it could not depart four levels in bank fraud case for defendant who resided with elderly parents, who were physically and financially dependant on her); *U.S. v. Prisel*, 2008 WL 4899451 (6 Cir. Nov. 13, 2008) (unpub) (sentence of one day in prison plus three years th supervised release for possessing child porn upheld despite guideline range of 27-33 months, where defendant worked from home, and had a dependant wife with whom he had a mortage for which they jointly owed over $70,000); *U.S. v. Owens*, 145 F.3d 923 (7th Cir. 1998) (departure from 169 to 120 months under § 5H1.6 for defendant who maintained good relationship with his children and court believed his active role raising and supporting his family was atypical for crack dealer and imprisonment may have forced wife on public-assistance and defendant also spent time with brother with Downs Syndrome); *U.S. v. Lehmann*, 513 F.3d 805 (8th Cir. Jan. 17, 2008) (sentence of probation affirmed where justified by the atypical nature and circumstances of the felon in possession case and by the defendant's need to care for her nineyear-old developmentally-disabled son); *U.S. v. Menyweather*, 431 F.3d 692 (9th Cir. 2005) ( in $500,000 embezzlement case, no abuse of discretion to depart 8 levels to probation in part because of defendant's care for daughter, which was unusual compared to other single parents); *U.S. v. Leon*, 341 F.3d 928 (9th Cir. 2003) (departure granted for defendant who was sole care giver of suicidal wife who also suffered from renal failure); *U.S. v. Aguirre*, 214 F.3d 1122 (9th Cir. 2000) (district court had discretion to depart downward 4 levels for extraordinary family circumstance that defendant's 8-year old son had lost his father and would be losing his mother for substantial amount of time); *U.S. v. Garcia-Salas*, 2007 WL

20

longtime caregiver for his grandfather, who is unable to cook for himself, take his medications, or function in any meaningful way without Mr. Tngryan's assistance. Mr. Tngryan's grandfather adamantly refuses assistance from anyone other than Mr. Tngryan, a clear side effect of Alzheimers.

Up and until the commission of the instant offense, Mr. Tngryan can be described as nothing other than a law abiding citizen, who going to college, or being able to seek out a better form of income due to the fact that he is the only person who can adequately care for his grandfather.[3] Despite his two brushes with the law that

---

4553913 (10th Cir. Dec. 27, 2007) (unpub.) (sentence at bottom-end of guideline range reversed and remanded for resentencing because it is clear 10th Circuit precedent had effectively foreclosed variances and post-Gall and Kimbrough, district court had greater sentencing discretion than it thought it did; defendant argued for a lower sentence for his extraordinary physical impairment, vulnerability in prison, extraordinary family circumstances, and mental and emotional condition); _U.S. v. Gauvin_, 173 F.3d 798 (10th Cir. 1999) (3-level departure to make defendant eligible for shock incarceration was warranted under § 5H1.6 to minimize impact on children where defendant supported 4 young children and his wife worked 14 hour days, miles from home, was barely able to provide for children and risked losing custody of her children and her job, and no extended family could take custody of them).

[3]   _Gall v. U.S._, 128 S. Ct. 586, 592, 599 (2007) (see discussion in Introduction above concerning defendant's employment history and the start of his own business); _U.S. v. Baker_, 445 F.3d 987, 992 (7th Cir. 2006) (affirming sentence of 78 months for distributing child pornography, where guidelines called for 108-135 months, based on defendant's lack of criminal history, relatively young age, religious background, and history of employment and higher education which coincide with sentencing factors set forth in § 3553(a); _U.S. v. Chase_, 560 F.3d 828 (8 Cir. 2009) (defendant's excellent employment record could support downward 3 variance); _U.S. v. Big Crow_, 898 F.2d 1326, 1331-32 (8th Cir. 1990) (upholding downward departure for 23 year old defendant convicted of assault resulting in serious bodily injury, based on excellent employment record since age 17 despite an unemployment rate of 72% on Indian reservation and defendant's efforts to lead a decent life on the reservation); _United States v. Whitehead_, 532 F.3d 991 (9th Cir. 2008)(upholding probation where guidelines range was 41-51 months for creating counterfeit access device where district court had found that defendant was remorseful, was employed, supported his daughter and no longer posed a threat to community);_United States v. Munoz-Nava_, 524 F.3d 1137 (10th Cir. 2008)(upheld sentence of one year and one day as reasonable for defendant convicted of possession with intent to distribute 100 grams of heroin with guideline range of

resulted in a zoning violation, that offense was clearly an ordinance violation and he served absolutely no jail time, and this instance was a singular act of aberrant behavior.[4]

Mr. Tngryan's personal history and characteristics are further supported through the numerous letters from friends and family attesting to his character and

---

46-57 months where district court determined guideline range was greater than necessary to meet goals of 3553(a)(2) and focused on his personal history and characteristics, including defendant's long work record, community support, lack of criminal record, and caregiver and sole supporter of his young son and elderly parents, and low recidivism risk); _U.S. v. Jones_, 158 F.3d 492 (10th Cir. 1998) (3-level downward departure affirmed for defendant convicted of possessing firearm by prohibited person where court considered defendant's "long impressive work history ...where good jobs are scarce" along with other factors_); U.S. v. Lamb_, 214 F. App'x 908 (11th Cir. 2007) (affirming 181 months for drug and firearm offenses despite guidelines minimum of 420 months, in light of defendant's employment at Humane Society and youth when he committed crimes that triggered career offender status); _U.S. v. Hodges_, 2009 WL 366231 (E.D. N.Y., Feb. 12, 2009) (nonguideline sentence proper for 43-year-old defendant who suffered from heroin addiction, yet who established his own company after serving ten year sentence for a non-violent offense and supported his family for another ten years until his relapse into drug abuse led to the collapse of his business); _U.S. v. Collado_, 2008 WL 2329275 (S.D.N.Y. 2008) (court imposed time served on felon-in-possession of ammo defendant had found in a used van he bought for his new moving business, and facts bore out his claim of turning his life around since his release from prison three years earlier, working many jobs and starting his own company with a law-abiding, devoted girlfriend).

[4]    See _United States v. Howe_, 543 F.3d 128, 133 (3rd Cir. 2008) (affirming probationary sentence and temporary home confinement for wire fraud despite an 18-24 month guideline range, where appellate court construed district court to have termed the offense an "isolated mistake" in the context of Howe's otherwise long and entirely upstanding life); _United States v. Hadash_, 408 F.3d 1080, 1084 (8th Cir. 2005) (six level downward departure upheld where district court concluded that defendant was "law abiding citizen, who [did] an incredibly dumb thing" and "was not the type of defendant the guidelines section was designed to punish"); _United States v. Davis_, 2008 WL 2329290 (S.D.N.Y. 2008) (time served imposed for possessing a sawed-off shotgun, which appeared to have been prompted by economic pressures of unemployment by a first-time offender who had throughout his 15-year marriage worked at lots of jobs to get education for his six children, even when they lived in homeless shelters); _United States v. Ward_, 814 F. Supp. 23, 24 (E.D. Va. 1993) (granting departure based on defendant's age as first-time offender since Guidelines do not "account for the length of time a particular defendant refrains from criminal conduct" before committing his first offense).

22

describe him as a religious family man, who is loving, productive and an honest member of society that even donates his time to charity events as a volunteer.

Thus, considering Mr. Tngryans role in the offense, employment history, charitable deeds, the need for him to care for his wife, child and grandfather and the fact that the instant offense appears to be aberrant behavior, based on the seriousness of the offense and his personal history and characteristics support a finding that a variance from a guideline term of imprisonment to a sentence of probation.

2.   The Need for the Sentence Imposed

**(A)    to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense**

The need for retribution is measured by the degree of "blameworthiness," which is generally assessed according to two kinds of elements: the nature and seriousness of the harm caused by the crime; and the offender's degree of culpability in committing the crime, in particular, his "degree of intent (mens rea), motives, role in the offense, and mental illness or other diminished capacity." Richard S. Frase, Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality" Relative to What?, 89 Minn. L. Rev. 571, 590 (Feb. 2005). [5]

Congress directed the Sentencing Commission to "insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, and the "general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that

results in serious bodily injury." 28 U.S.C. § 994(j). Congress issued this directive in the belief that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society," and that "in cases of nonviolent and non-serious offenders, the interests of society as a whole as well as individual victims of crime can continue to be served through the imposition of alternative sentences, such as restitution and community service." *See* Pub. L. No. 98-473, § 239, 98 Stat. 1987, 2039 (1984)(set forth at 18 U.S.C. § 3551).

Mr. Tngryan is plainly not a "violent and serious offender" who "pose[s] the most dangerous threat to society."[6] To the contrary, he wishes to return to life as productive member of society "in the most effective manner." While technically not a first time offender, he clearly acted out of character and the nature of his prior misdemeanor offense is clearly minor.[7] In short, a variance from the Guidelines is needed to avoid its restrictive policies on these issues.

---

[6]   In *United States v. Whitehead*, 532 F.3d 991 (9th Cir.2008) (*per curiam*), the Ninth Circuit affirmed a probationary sentence despite the guideline range of 41-57 months for creating counterfeit access devices; explaining that the district court had "properly take[n] into account" its "findingthat Whitehead's [nonviolent] crime '[di]d not pose the same danger to the community as many other crimes.'" *Id.* at 993.

[7]   *See United States v. Baker*, 445 F.3d 987, 992 (7th Cir. 2006) (affirming non-guideline sentence of 78 months from 108 months for defendant convicted of distributing child porn, justified in part by judge's finding that prison would mean more to this defendant than one who has been imprisoned before, which resonated with goal of "just punishment" in § 3553(a)(2)(A) and "adequate deterrence" in Section 3553(a)(2)(B); *United States  v. Cull*, 446 F.Supp.2d 961, 965 (E.D. Wis. 2006) (non-guideline sentence of 2 months in jail and 4 months home confinement, where advisory range was 10-14 months for marijuana offense by defendant who had never been confined, was sufficient to impress on him the seriousness of his crime and deter him from re-offending); *United States v. Qualls*, 373 F.Supp.2d 873, 877 (E.D.

In determining the proper sentence to promote respect for the law, the Supreme Court explained that sentencing courts may consider sentences imposed on similarly situated defendants:

> "The Government's legitimate concern that a lenient sentence for a serious offense threatens to promote disrespect for the law is at least to some extent offset by the fact that seven of the eight defendants in this case have been sentenced to significant prison terms. Moreover, the unique facts of Gall's situation provide support for the District Judge's conclusion that, in Gall's case, "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing."

*Gall v. United States,* 552 U.S. at 54 (citations omitted).

In the instant matter, although Mr. Tngryan pled guilty to a serious offense, a close look at the underlying facts and circumstances previously stated clearly indicate that a sentence on imprisonment would be but a derision of the law as a means to dispense harsh punishment without taking into account the real conduct and circumstances of the offense.

### (B) To Afford Adequate Deterrence to Criminal Conduct

The Supreme Court has recognized that the likelihood a defendant will engage in future criminal conduct is a central factor that district courts must assess when considering an appropriate sentence. *Pepper v. United States*, 131 S.Ct. 1229, 1242 (2011), *citing*, 18 U.S.C. §§ 3553(a)(2)(B)-(C); *Gall v. United States*, 552 U.S. 38, 59,

---

Wis. 2005) (generally, a lesser prison term is sufficient to deter one who has not been subject to prior lengthy incarceration).

128 S.Ct. 586 (2007). Similarly, the Eleventh Circuit has also evaluated a defendant's risk of recidivism "as a basis for a sentencing departure." *See* <u>United States v. Jayyousi</u>, 657 F.3d 1085, 1117 (11th Cir. 2011).

The empirical evidence is unanimous that there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime.[8] The Sentencing Commission has found that "[t]here is no correlation between recidivism and Guidelines' offense level. . . . While surprising at first glance, this finding should be expected. The Guidelines' offense level is not intended or designed to predict recidivism." U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 15 (2004)(hereinafter "*Measuring Recidivism*"). And according to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen, *et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science,* 91 Prison J. 48S, 50S-51S (2011).

---

[8] *See* Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, *Purposes and Functions of Sentencing*, Crime and Justice: A Review of Research 28-29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."); Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame").

The sentence requested herein serves as a serious and real deterrent. Beyond the extensive limits of probation and community confinement placed on Mr. Tngryan's freedom, yet another punishment inherent in the requested sentence is the proverbial hangman's noose. At any slip or violation of community confinement and probation, the noose can be tightened and the offender imprisoned. The Ninth Circuit used this very metaphor when it upheld a probationary sentence rather than imprisonment in a child pornography case:

> It is said that there is nothing like being sentenced to hang in the morning to focus a man's thoughts, and it is improbable that the district court's stern warning will be an ineffective deterrent in this case.

*United States v. Autery*, 555 F.3d 864, 876 (9th Cir. 2009).

Community confinement and the accompanying term of probation, then, is not just a momentary loss of freedoms—it entails an overhanging and continuing threat of greater losses. Trial courts have the inherent power to tighten the noose by extending the period of probation, or exacting harsher conditions, or requiring that Mr. Tngryan serve prison time. Thus, the threat of imprisonment is a deterrent factor: "Deterrence involves the prevention of criminal acts by the threat of punishment, which is addressed to the aversion to being punished." Richard G. Board, *Operationa lCriteria for Determining Criminal Responsibility*, 61 Colum.L.Rev. 221 (1961). Imposition of the requested sentence and this Court's supervisory power over him will serve as a

sufficiently effective deterrent, particularly since he is essentially a first time offender whom has never been to prison.[9]

### (C) To Protect the Public from Further Crimes of the Defendant

Notwithstanding the instant matter, Mr. Tngryan was a productive member of the community throughout his life and, by all indications with an appropriate sentence, will continue down that road well after this matter comes to a close. The offense was committed 2 years ago and Mr. Tngryan has been under pretrial supervision since his arrest and has undeniably performed in an exemplary manner, thereby demonstrating that he is not a threat to the community.[10] Thus, imposing a substantial and/or any significant prison term in this instance would not serve to protect the public, only unnecessarily cost it.[11]

---

[9]   _U.S. v. Baker_, 445 F.3d 987 (7th Cir. 2006) (affirming non-guideline sentence of 78 months from 108 months for defendant convicted of distributing child porn, justified in part by judge's finding that prison would mean more to this defendant than one who has been imprisoned before, which resonated with goal of "just punishment" in § 3553(a)(2)(A) and "adequate deterrence" in Section 3553(a)(2)(B); see also _U.S. v. Paul_, 239 F.App'x 353 (9th Cir. 2007) (defendant's 16-month sentence, the top end of the guideline range for unlawful receipt of federal funding, was unreasonably high because defendant was a first-time offender, returned the funds, and displayed remorse); _U.S. v. Jewell_, 2009 WL 1010877 (E.D.Ark. April 15, 2009) (defendant sentenced to 30 months in prison for aiding and abetting tax evasion, because guideline range near the statutory maximum of 5 years was inappropriate for first time offender; _U.S. v. Cull_, 446 F. Supp. 2d 961 (E.D. Wis. 2006) (non-guideline sentence of 2 months in jail and 4 months home confinement, where advisory range was 10-14 months for marijuana offense by defendant who had never been confined, was sufficient to impress on him the seriousness of his crime and deter him from re-offending); _U.S. v. Qualls_, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) (generally, a lesser prison term is sufficient to deter one who has not been subject to prior lengthy incarceration).

[10]   _United States v. Edwards_, 595 F.3d 1004, 1017 (9th Cir. 2010) (affirming probationary sentence on remand, where at the time of resentencing the district court considered the fact that the defendant had "completed without incident three and one half years of probation").

[11]   _U.S. v. Chavez_, 230 F.3d 1089 (8th Cir. 2000) (Bright, J., concurring) (sentence will probably cost taxpayers $836,000, and the defendant his life; guidelines range for nonviolent

**(D)     To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Mr. Tngryan does not appear to have a need for educational or vocational training, medical care, or other correctional treatment that would suggest a term of imprisonment is necessary.

3.     <u>The Kinds of Sentences Available</u>

Since the offense is a Class D felony, Mr. Tngryan is eligible for probation of not less than 1 year and no more than 5 years. 18 U.S.C. 3561(c)(1). Thus, the Court may impose a sentence of probation that must include a fine, restitution, or community service.

4.     <u>The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct</u>

The first fraud guideline, § 2F1.1, included two specific offense characteristics in addition to loss, one with four subparts applicable in the alternative and one that required a floor of 12 levels. *See* U.S.S.G. § 2F1.1 (1987). Today, § 2Bl.l includes eighteen (18) cumulative specific offense characteristics, many with multiple alternatives. *See* U.S.S.G. § 2B1.1 (2012). In the initial set of Guidelines, if there was "more than minimal planning" and "more than one victim," only one 2-1evel enhancement applied.

---

offenders drains billions from taxpayers and keeps potentially productive members of society locked up, causing staggering "opportunity costs"); U.S. v. Angelos, 345 F. Supp. 2d 1227 (D. Utah 2004) (cost of mandatory 61-year-sentence runs to $1,265,000, money that could otherwise be spent on other law enforcement or social programs to reduce crime) U.S. v. Hughes, 825 F. Supp. 866 (D.Minn.1993) (same, the court noting that "the non-rehabilitation purposes of incarceration-retribution, deterrence and incapacitation-would all be more than adequately served by a far shorter sentence. Both society and the defendant will pay a dear cost for this sentence and receive very little in return.")

Since the Commission has not corrected the problem of multiple overlapping enhancements, many courts have recognized that a departure or variance is necessary to avoid it. *See, e.g.,* <u>United States v. Lauersen</u>, 362 F.3d 160, 164 (2d Cir. 2004) (subsequently vacated in light of *Booker*)(upholding departure to mitigate effect of "substantially overlapping enhancements" at the high end of the fraud sentencing table); <u>United States v. Parris</u>, 573 F. Supp. 2d 744, 745 (E.D.N.Y. 2008) (Guidelines in security fraud cases "are patently absurd on their face" due to the "piling on of points" under § 2B1.1); <u>United States v. Adelson</u>, 441 F. Supp. 2d 506, 510 (S.D.N.Y. 2006) (Guidelines in fraud cases have "so run amok that they are patently absurd on their face," and describing enhancement for "250 victims or more," along with others, as "represent[ing], instead, the kind of 'piling-on' of points for which the guidelines have frequently been criticized").

In fiscal year 2012, sentences below the guideline ranges nationwide were imposed in 47.5% of all fraud cases, increased consistently since *Booker*.[12] In 2012, more significantly, the Court in the Central District of California sentenced under the fraud guideline to within or above the Guidelines range in only 43.8% of the cases. *Id.* at 18, Tbl. 10. Thus, it would appear that a sentence within the proscribed range under the fraud guideline, at least in this District, would cause a sentencing disparity.

The Sentencing Commission continues to ignore the fact that judges are increasingly imposing below Guidelines sentences in fraud cases. Only one reasonable conclusion can be drawn by these statistics: the fraud guideline, under § 2B1.1,

---

[12] *See* U.S.S.C., *2012 Sourcebook of Federal Sentencing Statistics: Sentences Relative To The Guideline Range By Each Primary Offense Category.*

produces sentences greater than necessary to achieve the purposes of sentencing pursuant to Section 3553(a). This Honorable Court is empowered under the Supreme Court's *Booker*-line of cases to disagree with the fraud guideline.

A significant variance is necessary to do justice in this case, and will also contribute to the evolution of responsible Guidelines. As the Supreme Court emphasized, when judges articulate reasons for sentences outside the guideline range, they provide "relevant information to both the court of appeals and ultimately the Sentencing Commission," which "should help the Guidelines constructively evolve over time, as both Congress and the Commission foresaw." *Rita v. United States,* 551 U.S. 338, 357-58 (2007).

IV.

**CONCLUSION**

WHEREFORE, defendant prays the Court will temper its judgment and sentence him to a term of probation with such special conditions the Court deems necessary.

Dated: May 10, 2016 .

Respectfully Submitted,

_____/s/_____
**/GEVORK CHILINGARYAN**
*Attorney for Defendant*